Don J. Foty
(will apply for admission *pro hac vice*)
HODGES & FOTY, L.L.P.
4409 Montrose Blvd, Ste. 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
Email: dfoty@hftrialfirm.com

Kathryn Harstad
STRINDBERG SCHOLNICK
BIRCH HALLAM HARSTAD THORNE
40 South 600 East
Salt Lake City, Utah 84102
Phone: (801) 359-4169
Email: kass@utahjobjustice.com

*Attorneys for Plaintiff and proposed Class Members*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | | |
|---|---|---|
| **MARTINA MEDFORD, on Behalf of Herself and on Behalf of All Others Similarly Situated,** | § § § § | **COLLECTIVE ACTION COMPLAINT UNDER THE FAIR LABOR STANDARDS ACT** |
| **Plaintiff,** | § § | **JURY TRIAL DEMANDED** |
| **V.** | § § | **CIVIL ACTION NO.** |
| **MANAGEMENT & TRAINING CORPORATION,** | § § § | |
| **Defendant.** | § | |

1. This case challenges Defendant Management & Training Corporation's ("Defendant") long standing policy of failing to properly compensate its non-exempt detention officers for all hours that they work. Specifically, Defendant required Plaintiff Martina Medford ("Plaintiff") and the proposed Class Members to undergo security screenings without pay. This

illegal policy resulted in the Plaintiff and proposed Class Members working more than 40 hours without compensation as required under the law.  Specifically, Defendant's policy violates the Fair Labor Standards, which requires that all non-exempt employees be compensated at a rate of time and one half their regular rates of pay for all hours worked over 40. *See* 29 U.S.C. § 207.

2.      Plaintiff brings her claims as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that an action to recover the liability prescribed by  the FLSA may be maintained against any employer by any one or more employees  for  and  on  behalf of other employees  similarly  situated.  Plaintiff brings this case on behalf of herself and other "similarly-situated" persons who   may join this case pursuant to § 216(b).

## SUBJECT MATTER JURISDICTION AND VENUE

3.      This Court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 201, *et seq.*

4.      Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise the claims in this Complaint took place in this district.  In particular, Defendant maintains its headquarters in this District and the decision to pay the Plaintiff and the Class Members in the illegal manner described in this Complaint was made in this District.

## PARTIES AND PERSONAL JURISDICTION

5.      Plaintiff Martina Medford is an individual residing in Haskell, Texas.  Her written consent to this action is attached hereto as Exhibit "A."

6.     The Class Members are all current and former detention officers paid on an hourly rate basis and who worked for Defendant during at least one week during the three year period prior to the filing of this Complaint to the present.

7.     Defendant Management & Training Corporation is a foreign for-profit business entity incorporated under the laws of Delaware. Defendant maintains its headquarters at 500 N Marketplace Dr. Centerville, UT 84014.  Defendant can be served with process by serving its registered agent CT Corporation System at 1108 E South Union Ave, Midvale, UT 84047.

8.     This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the privileges of conducting activities in the State of Utah and established minimum contacts sufficient to confer jurisdiction. First, Defendant maintains its headquarters and principal place of business in Utah.  Second, Defendant employs workers in Utah, conducts business in Utah, owns property in Utah, and has Utah customers.  Third, the decision to pay the Plaintiff and Class Members in the illegal manner described in this Complaint was made in Utah. Therefore, the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

## COVERAGE

9.     At all material times, Defendant has been an employer within the meaning of the FLSA. 29 U.S.C. § 203(d).

10.     At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning the FLSA. 29 U.S.C. § 203(s)(1).

11.     At all material times, Defendant has had an annual gross business volume in excess of $500,000. 29 U.S.C. § 203(s)(1)(A)(ii).

12.     At all material times, Plaintiff and Class Members were/are employees engaged in commerce or the production of goods for commerce as required by 29 U.S.C. § 206 and § 207.

## FACTS

13.     Defendant is a company that provides private prison services across the U.S. As stated on Defendant's website, Defendant operates "22 correctional facilities, 13 prison and detention medical departments, 5 detention centers…[Defendant] is headquartered in Centerville, Utah and employs nearly 8,000 people."[1] Among those employed by Defendant are thousands of detention officers.

14.      In 2020, the Tenth Circuit held that Defendant had violated the law by failing to pay for the time spent by its correctional officers undergoing security screenings prior to the start of their shifts. *Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270 (10th Cir. 2020) (holding that time spent in security screenings by correctional officers is compensable under the FLSA).[2]

15.     In particular, the Tenth Circuit in Aguilar stated as follows The *Aguilar* Court found the security screenings to be an intrinsic element of the correctional officers' principal activities in providing security at the prisons and was directly tied to the "productive work that the employee

---

[1] https://www.mtctrains.com/about-us/
[2] In addition to the *Aguilar* decision, courts across the country have held that the time spent by correctional officers and detention officers undergoing security screenings is compensable. *See, e.g.*, *Roberts v. State of Arizona*, No. Civ. A. 20-0060, 2021 WL 786615, at *7 (Ariz. Ct. App. Mar. 2, 2021) (unpublished); *Alvarez v. U.S.*, No. Civ. A. 20-1533C, 2021 WL 6163405 (Fed. Cl. Dec. 30, 2021) (unpublished); *Alexander v. U.S.*, No. Civ. A. 21-1143C , 2021 WL 5045270 (Fed. Cl. Oct. 30, 2021) (unpublished); *Adegbite v. U.S.* No. Civ. A. No. 20-1183, 2021 WL 5045268 (Fed. Cl. Oct. 29, 2021) (unpublished).

is employed to perform." *Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270, 1277-78 (10th Cir. 2020).  The Tenth Circuit stated as follows:

> MTC conducts the security screening to prevent weapons and other contraband from entering the prison. **And keeping weapons and other contraband out of the prison is necessarily "tied to" the officers' work of providing prison security and searching for contraband.** *Id.* Indeed, the security screening and the officers' work share the same purpose.
> …
> [T]he officers' principal duties include "searching for contraband and providing security." App. vol. 3, 446. **So even if this security screening relates in part to overall prison safety, what matters is that the screening is "tied to" the productive work that MTC employs the officers to perform, rendering it integral and indispensable to those duties.** *Busk*, 574 U.S. at 36, 135 S. Ct. 513.

*Id.* at 1278 (emphasis added).

16.     The Tenth Circuit further explained that if the security screenings were eliminated entirely, the correctional officers' work would be impaired. *Id.* at 1279.  This demonstrated that the security screenings were indispensable to the correctional officers' principal activity. *Id.*

17.     Despite this decision, Defendant has failed to pay for the time spent by its detention officers completing security screenings prior to the start of their shifts.

18.     Defendant operates several detention centers, including the following detention centers.

El Valle Detention Center

IAH Adult Detention Center

Imperial Regional Detention Facility

Otero County Processing Center

Bluebonnet Detention Center

19.     To operate the detention centers, Defendant employs detention officers.  The job duties of detention officers include overseeing the detainees, ensuring the safety and security of the detention centers, and monitoring the activities in the detention centers.

20.      Plaintiff worked as an hourly, non-exempt detention officer for Defendant at the Bluebonnet Detention Center in Texas.  Plaintiff worked for Defendant from November 2019 to April 2020.  She was paid an hourly rate of approximately $20.57 per hour.  Her schedule was normally Monday through Friday, 6 a.m. to 2 p.m, however, there were times when she was required to work hours longer than her scheduled shift.  She regularly worked 40-45 hours each week.

21.     The detention facilities, including the location where Plaintiff worked, are staffed by detention officers 24 hours per day and 365 days per week.  The detention officers are employed to ensure the safety and security of the detention facilities.  The detention officers are required to maintain constant vigilance and monitor the actions of others as soon as they arrive at the facility. If anything transpires that could affect the safety and security of the facilities, the detention officers have a duty to act and address those issues no matter the location and time of day that it occurs, including before their paid shifts begin and after they end.

22.     The posts at the detention facilities are staffed 24 hours per day.  Defendant assigns detention officers to posts that are scheduled for 8 hour shifts.  To operate 24 hours per day, there are three 8 hour shifts.  There is the 6 a.m. to 2 p.m. shift, the 2 p.m. to 10 p.m. shift, and the 10 p.m. to 6 a.m. shift.  The detention officers, including the Plaintiff and Class Members, were required to be at their assigned posts, in unform, with all assigned equipment, and ready to work

15 minutes prior to the start of their shift.  If they failed to do so and were late, they were subject to being disciplined.

23.     Unfortunately, Defendant failed to pay for all compensable time worked by the Plaintiff and Class Members.  Indeed, Defendant failed to pay for all time that Defendant has suffered or permitted them to work in the pre-shift security screening which was required to be performed on the premises of Defendant.  This pre-shift work that was integral and indispensable to their daily duties for Defendant.

24.     The primary job duty of the Plaintiff and the Class Members was to manage and oversee the detainee population at the detention centers, to ensure safety at the detentions, and to maintain security at the detentions. The Plaintiff and Class Members were responsible for the custody and discipline of detainees held at the detention centers operated by Defendants. Among other duties, the Plaintiff and Class Members searched for contraband and provided security, count, feed, and supervised detainees.

25.     Given the nature of the detention centers, the centers are secured by locked doors and metal detectors.  The Plaintiff and Class Members began their workday when they began a security screening in the lobby of the detention centers. Indeed, when the Plaintiff and Class Members arrived at the detention centers, they were first required to undergo a security screening to ensure that they did not inadvertently bring contraband or anything harmful into the facility.

26.     During the security screening, the Plaintiff and Class Members emptied their pockets, emptied their bags, removed their shoes, removed their belts, removed their jackets, removed all metal objects, and submitted any personal items in their possession for inspection.

27.     They then walked through a metal detector and underwent a further search if any metal objects were detected.  After clearing the metal detector, the Plaintiff and Class Members were able to gather their belongings.

28.     The Plaintiff and Class Members then put on their clothing, including their shoes, belts, and jackets.

29.      This security screening time lasted approximately 10-20 minutes per day and went uncompensated by Defendants.

30.     The security screenings were required by Defendants and the Plaintiff and Class Members were told in advance the time they were required to be at the detention centers.

31.     The security screenings were also necessary to the principal work performed by the Plaintiff and Class Members – to provide security in the detention centers and to search for contraband.  The security screenings were undertaken on Defendants' premises, controlled and required by Defendants, and undertaken primarily for the benefit of Defendants.

32.     Indeed, Defendants required the Plaintiff and Class Members to undergo this screening for the purposes of overall safety in the detention centers and to prevent the officers from inadvertently or intentionally bringing contraband into the detention centers.

33.     These security screenings prevented weapons and other contraband from entering the detention centers, and in doing so, was necessarily tied to the detention officers' work of providing safety, security and searching for contraband. Thus, the security screening and the work of the detention officers shared the same purpose. In fact, the screening time was tied to the productive work of supervising and providing security by the detention officers.  They were hired to ensure safety and the security screening was necessary to keep the detention centers safe.

34.     Defendant could not have eliminated the screenings altogether without impairing the detention officers' ability to perform their work.  If Defendants eliminated the security screenings, detention officers could inadvertently or intentionally bring weapons or other contraband into the detention centers.  The introduction of weapons and other contraband into the detention centers would most certainly result in a less secure detention center and would impair the detention officers' ability to provide security, supervise the detainees, and search for contraband.

35.     Additionally, preventing weapons and other contraband from entering the detention centers was an essential element of the detention officers' job duties.

36.     The security screenings were not incidental activities for the Plaintiff and Class Members, but instead, this time was integral and indispensable to their principal activity and is compensable.

37.     Defendants violated the law by not paying for this time.

38.     Defendant's method of paying Plaintiff and the Class Members in violation of the law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. Defendant knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

### CAUSE OF ACTION: FAILURE TO PAY OVERTIME WAGES
**(On Behalf of Plaintiff and the Class Members)**

39.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

40.     Section 7(a) of the FLSA, 29 U.S.C. § 207(a)) provides that an employer shall pay its employees at a rate no less than time-and-a-half for all hours worked more than forty (40) hours per workweek.

9

41.     The Plaintiff and Class Members are employees entitled to overtime wages.

42.     None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are paid are applicable to Defendant, Plaintiff, or the FLSA Class Members.

43.     Pursuant to 29 U.S.C. § 216(b), the Plaintiff and the FLSA Class Members are entitled to recover their unpaid overtime wages and liquidated damages in an amount equal to their unpaid wages.

44.     The Plaintiff and FLSA Class Members are also entitled to recover their attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COLLECTIVE ACTION ALLEGATIONS

45.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

46.     Plaintiff has actual knowledge that the FLSA Class Members have also been denied overtime pay for hours worked over forty (40) hours in a workweek.

47.     Plaintiff's knowledge is based on her personal work experience and through communications with other workers.

48.     Other workers similarly situated to Plaintiff throughout the United States were also not paid full overtime wages due to Defendant's illegal policies.

49.     Although Defendant permitted and/or required the FLSA Class Members to work more than 40 hours per week, Defendant denied them full compensation for their overtime hours.

50.     The FLSA Class Members are not exempt from receiving overtime pay.

51.     The FLSA Class Members are similar to the Plaintiff in terms of relevant job duties, pay structure, work conditions, and the denial of overtime pay.

52.     Defendant's failure to pay overtime compensation at the rates required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of any potential Plaintiff.

53.     The experiences of the Plaintiff, with respect to her pay, hours, and duties are typical of the experiences of the FLSA Class Members.

54.     The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

55.     Although the exact amounts of damages may vary among the FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to all FLSA Class Members.

56.     As such, the class of similarly situated Plaintiff for the FLSA Class is properly defined as follows:

> **All current and former detention officers who worked for Defendant at any time during the three year period prior to the filing of this Complaint to the present.**

## DAMAGES SOUGHT

57.     Plaintiff and the Class Members are entitled to recover their unpaid overtime wage compensation.

58.     Plaintiff and the Class Members are entitled to gap time pay.

59.     Plaintiff and the Class Members are also entitled to an amount equal to all of their unpaid wages due under the FLSA as liquidated damages.  29 U.S.C. § 216(b).

60.     Plaintiff and the Class Members are entitled to recover attorney's fees and costs as

required by the FLSA.  29 U.S.C. § 216(b).

## JURY DEMAND

61.     Plaintiff hereby requests trial by jury.

## PRAYER

62.     For these reasons, Plaintiff and the Class Members respectfully request that

judgment be entered in their favor awarding the following relief:

a.  An order designating this action as a collective action on behalf of the Collective Class
    and issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated
    individuals;

b.  An order finding that Defendant violated the FLSA;

c.  An order finding that these violations were willful;

d.  All unpaid wages;

e.  An equal amount as liquidated damages as allowed under the FLSA;

f.  Reasonable attorney's fees, costs, and expenses of this action as provided by the FLSA;
    and

g.  Such other and further relief to which Plaintiff and Class Members may be entitled at
    law or in equity.

Dated this 8th day of April, 2022

                                    Respectfully submitted,

                              By:  /s/ *Kathryn Harstad*
                                    Kathryn Harstad
                                    STRINDBERG SCHOLNICK
                                    BIRCH HALLAM HARSTAD THORNE
                                    675 East 2100 South, Suite 350
                                    Salt Lake City, Utah 84106
                                    Phone: (801) 359-4169
                                    Email: kass@utahjobjustice.com

                                    12

AND

Don J. Foty
HODGES & FOTY, LLP
4409 Montrose Blvd, Ste. 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
Email: dfoty@hftrialfirm.com

COUNSEL FOR PLAINTIFF AND CLASS
MEMBERS

## CONSENT TO PURSUE WAGE CLAIM AND BE
### REPRESENTED BY HODGES & FOTY, LLP

- I, ____Martina Medford_____ (print name), consent and agree to pursue my claims for unpaid wages through a lawsuit brought under the Fair Labor Standards Act and any state wage and hour law.

- I intend to pursue my claim individually, unless and until the court certifies this case as a collective or class action. I agree to serve as the class representative if I am selected by counsel.

- I authorize the named Plaintiff and Hodges & Foty, LLP to file and prosecute my claim for unpaid wages on my behalf, and designate the named Plaintiff and Hodges & Foty, LLP to make decisions on my behalf concerning the litigation, including negotiating a resolution of my claims, entering into an agreement with the lawyers in this case, and I understand I will be bound be such decisions.

- I agree to be represented by Hodges & Foty LLP.

- If my consent form is stricken or if I am for any reason not allowed to participate in this case, I authorize Plaintiff's counsel to use this Consent Form to re-file my claims in a separate or related action against my employer.

Date___1/25/2022_____      Signature___DocuSigned by: *Martina Medford* _____
466926A33826407...

# EXHIBIT "A"